**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION**

| | | |
|---|---|---|
| MICHAEL PELTIER and<br>KELLY PELTIER | §<br>§<br>§ | |
|     **Plaintiffs,** | §<br>§ | **CASE NO.  3:17-cv-00202** |
| **v.** | §<br>§ | |
| STGJ ENTERPRISES, LLC D/B/A SMI<br>AGENCY, LERETA, LLC, and<br>WRIGHT NATIONAL FLOOD<br>INSURANCE, | §<br>§<br>§<br>§<br>§ | |
|     **Defendants.** | § | |

**DEFENDANT WRIGHT NATIONAL FLOOD
INSURANCE COMPANY'S MOTION TO DISMISS**

NOW INTO COURT, through undersigned counsel, comes Defendant, Wright National

Flood Insurance Company ("Wright National"), a Write-Your-Own ("WYO") Program carrier

participating in the U.S. Government's National Flood Insurance Program ("NFIP") pursuant to

the National Flood Insurance Act of 1968, as amended,[1] appearing herein in its "fiduciary"[2]

capacity as the "fiscal agent of the United States,"[3] and files this Motion to Dismiss the

Plaintiff's Original Petition pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil

Procedure because the pleading fails to state a claim upon which relief can be granted.   In

support of the instant Motion to Dismiss, Wright National respectfully represents as follows:

---

[1]  42 U.S.C. § 4001 *et seq.*

[2]  44 C.F.R. § 62.23(f).

[3]  42 U.S.C. § 4071(a)(1); *Gowland v. Aetna*, 143 F.3d 951, 953 (5th Cir. 1998).

# I.  <u>Statement of Facts</u>

On or about May 22, 2017, Plaintiffs Michael Peltier and Kelly Peltier ("the Peltiers") filed a lawsuit styled "*Michael Peltier and Kelly Peltier, Plaintiffs v. STGJ Enterprises, LLC D/B/A SMI Agency, LERETA, LLC, and Wright National Flood Insurance, Defendants*," bearing Docket No. CV-0078928 in the County Court at Law No. 3 of Galveston County, Texas.

Wright National was served with the Citation and Plaintiff's Original Petition on May 30, 2017.  On June 23, 2017, with the consent of co-defendants STGJ Enterprises, LLC D/B/A SMI Agency and LERETA, LLC, Wright National removed the state court action to this Court based on federal question jurisdiction pursuant to 42 U.S.C. § 4072; 44 C.F.R. Pt. 61, App. A(1), Art. IX; and 28 U.S.C. §§ 1331, 1337, 1441 and 1446.  *See* Doc. 1 (Notice of Removal).

As alleged, the Peltiers seek a recovery and/or reimbursement for past and future premiums paid or incurred for a Standard Flood Insurance Policy ("SFIP") issued by Wright National in its capacity as a WYO Program carrier participating in the NFIP pursuant to the National Flood Insurance Act of 1968.

The Plaintiffs' Original Petition (at ¶¶ 12-14) alleges in part as follows:

- "In early 2015, Plaintiffs, who had decided to move from their home in colder climes to Galveston, Texas, began researching the cost to purchase a home in that locale. When they located a suitable property (at 2705 Ave O, Galveston, TX 77550) they visited SMI in order to determine the full cost of ownership.  The Peltiers discussed the need to insure a home the[y] were considering for purchase, their need to have that home insured and to maintain insurance to obtain a mortgage.  Shortly thereafter, the Agency provided a price quote for homeowners, windstorm, and flood insurance.  However, SMI's quote,

apparently based on information provide[d] through Defendants LERETA and/or Wright, represented to the Peltiers that the property was located in a 'preferred flood zone (which has a lower premium then [sic] other flood zones).'  The result was a quotation from SMI for a cost of $430.00 for the annual premium for that flood insurance policy."

- "The Peltiers, acting in reliance on the price quotation and other representations of SMI and/or LERETA and/or Wright closed on that purchase transaction on or about May 31, 2015, the same date the Peltiers purchased the flood policy from Wright, through SMI, again in reliance on those previously mentioned representations."

- "In July, 2015, the Peltiers, due to actions undertaken by their mortgage company (apparently to verify the validity of the insurance coverage provided by the Peltiers as [] required by their security agreement with that mortgagor) discovered the misrepresentations in both the price quotation and the ability to be 'grandfathered' at a lower premium.  The Peltiers were eventually informed that not only was the premium misquoted but that the misquote was due to an error by Defendants in describing the location of the property in a 'preferred zone' for flood insurance rate determination.  The difference in the annual flood insurance premium to the Peltiers was and is roughly $3,500.00 greater than the price quoted."

(Plaintiffs' Original Petition, p. 3, ¶¶ 12-14).

The Plaintiffs' Original Petition purports to allege claims for "Deceptive Trade Practices" and "Negligent Misrepresentation".  (*see* Plaintiffs' Original Petition, pp. 4-5.)

The First Count of Plaintiffs' Original Petition, entitled "Deceptive Trade Practices", alleges that "Plaintiffs would show that Defendants engaged in certain false, misleading and

deceptive acts, practices and/or omissions actionable under the Texas Deceptive Trade Practices – Consumer Protection Act (Texas Business and Commerce Code, Chapter 17.41, et seq.), as alleged herein below"; that "Defendants engaged in an 'unconscionable action or course of action' to the detriment of Plaintiffs as that term is defined by Section 17.45(5) of the Texas Business and Commerce Code, by taking advantage of the lack of knowledge, ability, experience, or capacity of Plaintiffs to a grossly unfair degree"; that "Plaintiffs would show that the acts of Defendant SMI violated the following subsections of § 17.46(b) of the Texas Business and Commerce Code:  (2) causing confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods and services; (5) representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which the person does not"; that "Plaintiffs would show that the acts, practices and/or omissions complained of were the producing cause of Plaintiffs' damages more fully described hereinbelow"; and that "Plaintiffs have timely notified Defendants of such complaint pursuant to Section 17.505(a) of the Texas Business and Commerce Code by letter dated February 22, 2016, and would show compliance with all conditions precedent to the filing of this suit and recovery of additional damages and attorney's fees."  (Plaintiffs' Original Petition, p. 4, ¶¶ 15-19).

The Second Count of Plaintiffs' Original Petition, entitled "Negligent Misrepresentation", alleges that "Plaintiffs would show that Defendants supplied false information in the course of their business, profession or employment, or in the course of a transaction in which Defendants have a pecuniary interest, and that such information was supplied by Defendants for the guidance of Plaintiffs in the transactions described hereinabove";

that "Defendants failed to exercise reasonable care or competence in obtaining or communicating such information"; that "Plaintiffs suffered pecuniary loss, described more fully hereinbelow, which was proximately caused by Plaintiffs' justifiable reliance on such information"; and that "Plaintiffs therefore assert a cause of action for negligent misrepresentation against Defendants, as provided by Federal Land Bank Association of Tyler v. Sloane, 825 S.W.2d 439 (Tex. 1991)." (Plaintiffs' Original Petition, p. 5, ¶¶ 20-21).

Plaintiffs' Original Petition (at ¶ 22) alleges the following economic and actual damages:

(a)     Out-of-pocket expenses in the past, including but not limited to the cost of a flood insurance policy at the "non-preferred" rate versus the cost of the policy as represented.

(b)     future expenses for the life of the loan which Plaintiffs will, in all reasonable probability, incur for the cost of a flood insurance policy at the 'non-preferred' rate versus the cost of the policy as represented.

(Plaintiffs' Original Petition, p. 5, ¶ 22).

The Prayer of the Plaintiffs' Original Petition demands a judgment "for the economic and actual damages requested hereinabove in an amount in excess of the minimum jurisdictional limits of the Court, together with prejudgment and postjudgment interest at the maximum rate allowed by law, attorney's fees, [and] costs of court …" (Plaintiffs' Original Petition, p. 6).

## II.  Argument

### 1.  Standard Of Review Under Fed. R. Civ. P. 12(b)(6) and 9(b).

**A. Rule 12(b)(6).**  "The Fifth Circuit has recently held that the sufficiency of a plaintiff's state-court petition for purposes of a removal and improper joinder analysis should be measured under federal court pleading standards." *Lopez v. United Prop. & Cas. Ins. Co.*, 197 F.Supp.3d 944, 949 (S.D. Tex. 2016) (citing *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp.,*

*Ltd.*, 818 F.3d 193, 208 (5th Cir. 2016)).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Edionwe v. Bailey*, -- F.3d --, 2017 WL 2623730, at *2 (5th Cir., June 19, 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (quoting *Ashcroft v. Iqbal*).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)).

**B.  Rule 9(b).**  In this case, Plaintiff's Original Petition purports to allege claims under the Texas Deceptive Trade Practices Act.  "In federal court, claims under the Texas Deceptive Trade Practices Act are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b)."  *Lopez v. United Prop. & Cas. Ins. Co.*, 197 F.Supp.3d 944, 951–52 (S.D. Tex. 2016) (citing *Omni USA, Inc. v. Parker-Hannifin Corp.*, 798 F.Supp.2d 831, 836 (S.D. Tex. 2011) and *Berry v. Indianapolis Life Ins. Co.*, 608 F.Supp.2d 785, 800 (N.D. Tex. 2009) (applying Rule 9(b) to claims under the DTPA and Chapter 541 of the Texas Insurance Code)).

Plaintiff's Original Petition also purports to allege a claim for negligent misrepresentation, which likewise is subject to the heightened pleading requirements of Rule 9(b).  *See Peacock v. AARP, Inc.*, 181 F.Supp.3d 430, 435 (S.D. Tex. 2016) ("Claims alleging violations of the Texas Insurance Code and the DTPA and those asserting fraud, fraudulent inducement, fraudulent concealment, and negligent misrepresentation are subject to the

requirements of Rule 9(b)." (citation omitted)); *Sec. & Exch. Comm'n v. Mapp*, -- F.Supp.3d --, 2017 WL 823559, at *5 (E.D. Tex. Mar. 2, 2017); *Nelson v. Ocwen Loan Servicing, LLC*, No. CV H-16-778, 2016 WL 7324284, at *6 (S.D. Tex. Nov. 7, 2016), *report and recommendation adopted*, No. CV H-16-778, 2016 WL 7242735 (S.D. Tex. Dec. 15, 2016).

Rule 9(b) requires a party to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b).  "At a minimum, Rule 9(b) requires allegations of the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby."  *Lopez*, 197 F.Supp.3d at 952 (citing *Wallace v. Tesoro Corp.*, 796 F.3d 468, 480 (5th Cir. 2015)).  "In other words, a plaintiff must plead the 'who, what, when, where, and how' of the fraud."  *Id.* (citing *Williams v. Bell Helicopter Textron, Inc.*, 417 F.3d 450, 453 (5th Cir. 2005)); *see also Peacock v. AARP, Inc.*, 181 F. Supp. 3d 430, 435 (S.D. Tex. 2016) ("A plaintiff pleading fraud must 'specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent.'"(citation omitted)).[4]  "Courts are to read Rule 9(b)'s heightened pleading requirement in conjunction with Rule 8(a)'s insistence on simple, concise, and direct allegations."  *Peacock*, 181 F.Supp.3d at 435 (citing *Williams v. WMX Techs., Inc.,* 112 F.3d 175, 178 (5th Cir. 1997); *Griggs v. State Farm Lloyds,* 181 F.3d 694, 701 (5th Cir. 1999)).  "Failure to comply with Rule 9(b)'s requirements authorizes the Court to dismiss the pleadings as it would for failure to state a claim under Rule 12(b)(6)."  *Spring St. Apts Waco*, No. W-16-CA-00315-JCM, 2017 WL 1289036, at *11 (W.D. Tex. Apr. 6, 2017)

---

[4] "The goals of Rule 9(b) are to 'provide[ ] defendants with fair notice of the plaintiffs' claims, protect[ ] defendants from harm to their reputation and goodwill, reduce[ ] the number of strike suits, and prevent[ ] plaintiffs from filing baseless claims.'" *Peacock v. AARP, Inc.*, 181 F. Supp. 3d 430, 435 (S.D. Tex. 2016) (citing *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 190 (5th Cir. 2009)).

(citing *United States ex rel. Williams v. McKesson Corp.*, No. 3:12–CV–0371–B, 2014 WL 3353247, at *3 (N.D. Tex. July 9, 2014); *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996)).

**2. Plaintiffs' Original Petition Fails To State An Actionable Claim Against Wright National Flood Insurance Company For Deceptive Trade Practices.**

Plaintiffs' Original Petition should be dismissed because it fails to state an actionable claim against Wright National under the Texas Deceptive Trade Practices Act, and likewise fails to satisfy Rule 9(b)'s heightened pleading requirements.

"To maintain a cause of action under the Texas DTPA, [the plaintiff] must establish that (1) it is a consumer under the DTPA with respect to its claim against [the defendant]; (2) [the defendant] committed a false, misleading, or deceptive act under § 17.46(b) of the DTPA, breached an express or implied warranty, or engaged in an unconscionable action or course of action; and (3) these acts were the producing cause of [the plaintiff's] actual damages." *Brittan Commc'ns Int'l Corp. v. Sw. Bell Tel. Co.*, 313 F.3d 899, 907 (5th Cir. 2002) (citing *Brown v. Bank of Galveston, N.A.,* 963 S.W.2d 511, 513 (Tex. 1998)); *see also Kane v. Yancey*, No. CV H-15-1861, 2016 WL 922243, at *4 (S.D. Tex. Feb. 16, 2016), *report and recommendation adopted,* No. 4:15-CV-1861, 2016 WL 1029557 (S.D. Tex. Mar. 9, 2016) ("just as a fraud claim requires allegations of some injury and/or damages, a claim under Texas Deceptive Trade Practices Act requires allegations that a false, misleading or deceptive act was a producing cause of the plaintiff s damages." (citing *Doe v. Boys Clubs of Greater Dallas, Inc.,* 907 S.W.2d 472, 478 (Tex. 1995) ("The elements of these DTPA actions are: (1) the plaintiff is a consumer, (2) the defendant engaged in false, misleading, or deceptive acts, and (3) these acts constituted a producing cause of the consumer's damages.")).

"Section 17.46(b) of the DTPA makes unlawful false, misleading, or deceptive acts or practices in the conduct of any trade or commerce." *McPeters v. LexisNexis*, 910 F.Supp.2d 981, 987 (S.D. Tex. 2012), *on reconsideration,* 11 F.Supp.3d 789 (S.D. Tex. 2014). "Detrimental reliance is an essential element for proving false, misleading or deceptive acts under the DTPA." *Id.* (citing Tex. Bus. & Com. Code § 17.50(a)(1)(B)).

As alleged, Plaintiffs' Original Petition falls far short of alleging a plausible claim against Wright National for violating the Texas DTPA. Plaintiffs allege that STGJ Enterprises LLC d/b/a SMI Agency provided them with "a price quote for homeowners, windstorm, and flood insurance." (Plaintiffs' Original Petition, ¶ 12). Plaintiffs further allege that SMI provided "a quotation … for a cost of $430.00 for the annual premium for [the] flood insurance policy." (*Id.*). Plaintiffs allege equivocally that "SMI's quote" was "apparently based on information provide[d] through LERETA and/or Wright[.]" (*Id.*). Plaintiffs further allege in a vague, scatter-shot fashion that "acting in reliance on the price quotation and other representations of SMI and/or LERETA and/or Wright" they closed on the purchase of their home on May 31, 2015 and "purchased the flood policy from Wright." (*Id.*, ¶ 13). Plaintiffs allege that the actual premium for the flood policy was "roughly $3,500.00 greater than the price quoted" by SMI based on an erroneous designation of "the location of the property in a 'preferred zone' for flood insurance determination." (*Id.*). Absent from the Plaintiffs' Original Petition are any factual allegations plausibly demonstrating that Wright National engaged in any false, misleading, or deceptive acts, or that these acts constituted a producing cause of plaintiffs' alleged damages.

Indeed, as alleged Wright National's only involvement in this case is that it issued the Peltiers a SFIP in its capacity as a WYO Program carrier pursuant to the NFIP. Pursuant to

Congressional authorization found at 42 U.S.C. § 4071(a)(1), FEMA uses WYO companies like Wright National to aid it in its statutory duty to administer the NFIP. *See also* 42 U.S.C. § 4081(a) (permitting FEMA's Director to enter into arrangements with private insurance companies in order to make use of their "facilities and services"); 44 C.F.R. § 62.23(a)-(d) (establishing the WYO program to permit private insurers to sell and administer Standard Flood Insurance Policies). Wright National, as a WYO Program carrier, was authorized to issue the SFIP—which is a federal regulation found at 44 C.F.R. Pt. 61, App. A(1)—on behalf of the federal government pursuant to the "Arrangement" between itself and FEMA, set forth at 44 C.F.R. Pt. 62, App. A (2015).[5] These forms of the flood policy are incorporated into the Code of Federal Regulations at 44 C.F.R. § 61.13(a). "[T]he exact terms and conditions of NFIP policies and eligibility for federal flood insurance are dictated by federal law." *Spong v. Fid. Nat. Prop. & Cas. Ins. Co.*, 787 F.3d 296, 299 (5th Cir. 2015). Wright National cannot waive or alter or amend any of the provisions of the SFIP. *See* 44 C.F.R. § 61.13(d); 44 C.F.R. Pt. 61, App. A(1), Art. VII(D). And at all pertinent times, Wright National's role as a WYO Program carrier (and as set forth in its Arrangement with FEMA) was to market, sell, administer, and handle claims under SFIPs that it was authorized to issue on behalf of the federal government in its "fiduciary" capacity as "fiscal agent" of the United States. *See* 44 C.F.R. § 62.23(f); 42 U.S.C. § 4071(a)(1). Plaintiffs have not plausibly alleged that Wright National did anything other than issue a SFIP

---

[5] At all pertinent times, including the date the subject SFIP was issued by Wright National in its Capacity as a Write Your Own (WYO) company under the provisions of the NFIA, Wright National issued SFIP policies under its own name and adjusted and paid claims under the SFIP pursuant to a Financial Assistance/Subsidy Arrangement ("the Arrangement") with FEMA. Each Arrangement entered into by a WYO company was in the form and substance of the standard Arrangement, a copy of which was in Title 44 of the Code of Federal Regulations (CFR) Part 62, Appendix A. *See* 44 CFR 62.23(a). Effective December 23, 2016, FEMA issued a Final Rule to remove the Arrangement from the appendices of the NFIP regulations. *See* Federal Register, Vol. 81, No. 226 (Nov. 23, 2016).

and charge a premium for the SFIP based on the information they supplied in their application, in accordance with the NFIP and its implementing regulations.  No actionable DTPA claim has been alleged against Wright National.[6]

The terms and conditions of the SFIP are codified in the Code of Federal Regulations and publicly available.  *See* 44 C.F.R. Pt. 61, App. A(1).  As a matter of law, Plaintiffs are presumed to have actual or constructive knowledge of the SFIP terms.  *See Heckler v. Cmty. Health Servs.*, 467 U.S. 51, 63 (1984) ("those who deal with the Government are expected to know the law and may not rely on the conduct of the conduct of government agents contrary to the law"); *Lobeck v. Licatino*, -- Fed. Appx. --, 2017 WL 923387, at *1 (5th Cir. Mar. 7, 2017) (holding that insured under SFIPs could not have reasonably relied on alleged misrepresentations by WYO Program Carriers that her property was insurable, because plaintiff was "insured by the federal government through the NFIP", the flood insurers therefore "were acting as government agents", and plaintiff "was charged with the constructive knowledge that her property was located" in the Coastal Barrier Resources System, thereby rendering it ineligible for federally funded flood insurance).

The SFIP Agreement provides as follows:

The Federal Emergency Management Agency (FEMA) provides flood insurance under the terms of the National Flood Insurance Act of 1968 and its Amendments, and Title 44 of the Code of Federal Regulations.

---

[6] All SFIPs, including the Peltiers' policy, contain the following provision: "This policy and all disputes arising from the handling of any claim under the policy are governed exclusively by the flood insurance regulations issued by FEMA, the National Flood Insurance Act of 1968, as amended (42 U.S.C. 4001, et seq.), and Federal common law."  44 C.F.R. pt. 61, app. A(1), art. IX.  Thus, insofar as the Plaintiffs' claims relate to the SFIP issued by Wright National, they are governed exclusively by the NFIA, the flood insurance regulations issued by FEMA, and federal common law, rather than state law.

> We will pay you for direct physical loss by or from flood to your insured property
> if you:
>
> 1. Have paid the correct premium;
> 2. Comply with all terms and conditions of this policy; and
> 3. Have furnished accurate information and statements.
>
> We have the right to review the information you give us at any time and to revise
> your policy based on our review.

44 C.F.R. Pt. 61, App. A(1), art. I (Agreement).   The SFIP includes the Plaintiffs' flood

insurance Application.   44 C.F.R. Pt. 61, App. A(1), art. II(B)(21) (Definitions).   The SFIP

provides in pertinent part:

> 3. Application. The statement made and signed by you or your agent in applying
> for this policy. The application gives information we use to determine the
> eligibility of the risk, the kind of policy to be issued, and the correct premium
> payment. The application is part of this flood insurance policy. For us to issue you
> a policy, the correct premium payment must accompany the application.

44 C.F.R. § Pt. 61, App. A(1), art. II(B)(3) (Definitions).   Thus, by its express terms, the SFIP

placed the onus on the Plaintiffs (not Wright National) to furnish accurate information and

statements about the property to be used to determine the eligibility of the risk, the kind of policy

to be issued, and the correct premium payment.

   As noted above, "[d]etrimental reliance is an essential element for proving false,

misleading or deceptive acts under the DTPA." *McPeters*, 910 F.Supp.2d at 987.   However, as in

*Spong, supra,* demonstrating "detrimental reliance is problematic" in this case. 787 F.3d at 311.

Plaintiffs have failed to identify or allege any false, misleading or deceptive acts by Wright

National, nor have they plausibly alleged detrimental reliance on any false, misleading or

deceptive acts by Wright National.   At all pertinent times, Wright National acted as "an

intermediary for the Government."   *Spong*, 787 F.3d at 308.   "The [Plaintiffs] applied for a flood

insurance policy that was part of a federal program, with the understanding that covered claims

-12-

would be paid with federal funds." *Id.* "[I]n the federal flood insurance scheme," Wright National was merely "a conduit." *Id.* at 310. FEMA uses Flood Insurance Rate Maps (FIRM) and other publicly available information (including information contained in FEMA's Flood Insurance Manual) to determine flood insurance eligibility, zoning and rating. Plaintiffs could have contacted FEMA to obtain a determination of whether the subject property was in a "preferred flood zone", and could have consulted the maps publicly available. *See Spong,* 787 F.3d at 311 ("The Spongs could have contacted FEMA or the Fish and Wildlife Service to obtain a determination of whether their property was in the CBRS. They could have consulted the maps publicly available."). It was incumbent on the Peltiers—not Wright National—to determine whether the property was located in a "preferred flood zone" and how the property's location would affect rating.

In *Spong*, the plaintiffs brought a Texas state court action against a flood insurer (Fidelity) which participated in the National Flood Insurance Program (NFIP), alleging *inter alia* that Fidelity had made negligent misrepresentations regarding a flood insurance policy it sold them. *Id.* at 298. At issue was whether their property was located in the John H. Chafee Coastal Barrier Resources System (CBRS). *Id.* at 299. If it was, then the NFIP prohibited Fidelity from issuing a flood insurance policy for the property. *Id.* Fidelity (acting in its capacity as a WYO Program Carrier under the NFIP) issued a SFIP insuring the Spongs' property. *Id.* at 298-99. Years later, after Hurricane Ike destroyed their property, it was determined that the property was located in the CBRS. *Id.* Accordingly, pursuant to federal regulations and the terms of the SFIP, it was determined that the flood insurance policy was void, and Fidelity denied the Spongs' claim. *Id.* at 301-02. The Spongs filed multiple Texas state law claims against Fidelity

-13-

(negligence, negligent misrepresentations, Texas Insurance Code violations, Deceptive Trade

Practices–Consumer Protection Act violations, gross negligence, fraud, fraud by non-disclosure,

fraudulent inducement, and promissory estoppel) after Fidelity advised them that the SFIP was

void from its inception because the property was ineligible for flood insurance under the NFIP.

*Id.* at 307.  However, the Fifth Circuit determined that these state law claims could not succeed

in light of the U.S. Supreme Court's decisions in *Federal Crop Insurance Corp. v. Merrill*, 332

U.S. 380 (1947), and *Heckler*, 467 U.S. 51.  The Fifth Circuit explained:

> In the present case, Fidelity is an intermediary for the Government. The Spongs
> applied for a flood insurance policy that was part of a federal program, with the
> understanding that covered claims would be paid with federal funds. The Coastal
> Barrier Resources Act provides that federal flood insurance cannot be issued for
> property in the CBRS. Federal regulations are also clear on this point. Under the
> rationale of *Merrill* and *Heckler*, the Spongs cannot claim ignorance of the
> statutes and regulations as an excuse for relying on Fidelity's issuance of a policy
> as a determination or representation that their property was not located in the
> CBRS.

*Spong*, 787 F.3d at 309 (footnotes omitted).  The Fifth Circuit further noted that it was

incumbent on the Spongs (not the WYO Program Carrier, which was acting as a representative

of the U.S. Government) to ascertain whether their property was eligible for SFIP coverage:

> The Spongs were seeking coverage that was to be provided from public funds. It
> was incumbent upon the Spongs to determine whether their property was eligible
> for a SFIP. In determining whether the property was within the CBRS and
> therefore eligible for a federal flood insurance policy, Fidelity was acting as the
> representative of the Government, not the Spongs. *The Spongs could not*
> *reasonably rely on Fidelity to make that determination for them*.

*Id.*, at 309-10 (emphasis added).  The Fifth Circuit acknowledged "the difficult position in which

the Spongs find themselves."  *Id.* at 311.  "However, [the Spongs] sought to obtain a federal

insurance policy on property that, under federal law, is uninsurable."  *Id.*  The Fifth Circuit

therefore concluded that "the issuance of a policy by Fidelity was not a representation on which

the Spongs could rely" as a matter of law.  *Id.* at 312; *see also Lobeck,* 2017 WL 923387, at *1 (similarly concluding that insured under SFIPs could not have reasonably relied on alleged misrepresentations by WYO Program Carriers that her property was insurable, because plaintiff was "insured by the federal government through the NFIP", flood insurers "were acting as government agents", and plaintiff "was charged with the constructive knowledge that her property was located" in the CBRS thereby rendering it ineligible for federally funded flood insurance).

Here, by comparison, the Peltiers sought to obtain a federal insurance policy on property that (as alleged) was not located in a "preferred flood zone."  As in *Spong*, it was incumbent on the Peltiers (not Wright National, which was acting as a representative of the U.S. Government) to ascertain whether the property was in a "preferred" or "non-preferred" flood zone.  As in *Spong*, the issuance of the SFIP by Wright National for a premium that was rated based on the location of the property was not a representation on which the Peltiers could reasonably rely as a matter of law.  And the plain language of the SFIP—of which Plaintiffs are presumed to have knowledge as a matter of law—obligated the Plaintiffs (not Wright National) to obtain and furnish accurate information and statements about the property to be used to determine the eligibility of the risk, the kind of policy to be issued, and the correct premium payment.

Moreover, as noted above "[i]n federal court, claims under the Texas Deceptive Trade Practices Act are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b)."  *Lopez,* 197 F.Supp.3d at 952.  "At a minimum, Rule 9(b) requires allegations of the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby."  *Id.*  "In other words,

-15-

a plaintiff must plead the 'who, what, when, where, and how' of the fraud." *Id.* Plaintiffs'

Original Petition falls woefully short of satisfying Rule 9(b)'s heightened pleading requirements,

and plainly fails to allege the time, place, and contents of any false representations by Wright

National; or the identity of the person making the misrepresentation and what he obtained

thereby;[7] or the "who, what, when, where, and how" of any false, misleading, or deceptive act,

or of any unconscionable action or course of action attributable to Wright National.[8]

In sum, Plaintiffs' Deceptive Trade Practices claim should be dismissed for failure to

state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and for failure to

satisfy the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil

Procedure.

### 3. Plaintiffs' Original Petition Fails To State An Actionable Claim Against Wright National Flood Insurance Company For Negligent Misrepresentation.

---

[7] The Plaintiffs allege in a vague, sweeping manner that they acted in reliance on "the price quotation and other representations of SMI and/or LERETA and/or Wright[.]" (Plaintiffs' Original Petition, ¶ 13). Rather than allege and distinguish any specific conduct of or representations by each defendant – SMI, LERETA and Wright National – Plaintiffs merely lump all three defendants together and assert a boilerplate, formulaic claim against all defendants, which plainly fails to state a plausible claim under Rule 12(b)(6) or satisfy the heightened pleading requirements of Rule 9(b). *See Spring St. Apts Waco*, 2017 WL 1289036, at *5 ("In sum, Plaintiff's sweeping allegations as to all 'Defendants' fail to allege and distinguish specific conduct against Crawford, the insurance adjuster, from the insurer. Because Plaintiff fails to allege specific actionable conduct by the adjuster, distinguishable from the claims against the insurer, it fails to state a claim upon which relief can be granted.").

[8] "To prove an unconscionable action or course of action, a plaintiff must show that the defendant took advantage of his lack of knowledge and that the resulting unfairness was glaringly noticeable, flagrant, complete and unmitigated." *Brittan*, 313 F.3d at 907 (citing *Bradford v. Vento*, 48 S.W.3d 749, 760 (Tex. 2001)). "[P]roving unconscionability in a TDTPA case is difficult." *Strauss v. Ford Motor Co.*, 439 F.Supp.2d 680, 687–88 (N.D. Tex. 2006). Plaintiffs' Original Petition merely alleges in a conclusory fashion that Defendants engaged in "unconscionable action or course of action." However, the Petition is devoid of any facts to support such a formulaic recitation as to Wright National and plainly fails to allege a plausible claim that Wright National engaged in any "unconscionable action or course of action."

-16-

Plaintiffs' Original Petition also should be dismissed because it fails to state an actionable negligent misrepresentation claim against Wright National, and fails to satisfy Rule 9(b)'s heightened pleading requirements.

"Under Texas law, a claimant alleging negligent misrepresentation must show the following: (1) the representation is made by a defendant in the course of his business, or in a transaction in which the defendant has a pecuniary interest; (2) the defendant supplies 'false information' for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers a pecuniary loss by justifiably relying on the representation." *Spring St. Apts Waco*, 2017 WL 1289036, at *11 (citing *Ellis v. Bank of N.Y. Mellon Tr.  Co.*, No. 4:11–CV–049, 2012 WL 359673, at *3 (E.D. Tex. Feb. 2, 2012); *Fed. Land Bank Ass'n v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991)); *see also Physicians ACO, LLC v. Computer Scis. Corp.*, No. 4:16-CV-1293, 2017 WL 661516, at *3 (S.D. Tex. Feb. 16, 2017); *Nelson*, 2016 WL 7324284, at *6.

As noted above, Rule 9(b) requires a plaintiff to plead a claim for negligent misrepresentation with particularity.  Bald assertions, conclusory allegations and formulaic recitations of the claim (such as those contained in Plaintiffs' Original Petition) are insufficient to satisfy the plausibility standard under *Iqbal* and *Twombly*, let alone the more stringent pleading requirements of Rule 9(b).  As stated by one District Court:

> Other than generically identifying the statements made, Plaintiffs provided no facts to support the allegations. Plaintiffs did not specify who made the statements, when and where they were made, or why they were fraudulent. These allegations cannot survive Rule 9(b).

Plaintiffs' pleading problems run deeper, though, because the allegations subject to Rule 9(b), as well as the alleged negligent misrepresentations concerning Defendant's administration of the loan and insurance coverage, fail to even satisfy the Rule 12(b)(6) pleading standard. Plaintiffs made the bald assertion as to both the fraud and negligent-misrepresentation causes of action that Plaintiffs relied on the alleged representations to their harm. They did not indicate what actions they took in reliance on each particular statement or how they were harmed. Their allegations are insufficient, not only in failing to demonstrate actual reliance, but also in failing to demonstrate justifiable reliance. *See Grant Thorton LLP v. Prospect High Income Fund*, 314 S.W.3d 913, 923 (Tex. 2010) ("Both fraud and negligent misrepresentation require that the plaintiff show actual and justifiable reliance."). In other words, Plaintiffs provided nothing more than "a formulaic recitation" of the reliance and damage elements of the fraud and negligent-misrepresentation claims. *See Twombly*, 550 U.S. at 555.

*Nelson*, 2016 WL 7324284, at *7; *see also McKinney Square Props. No. 1 Ltd. v. Seneca Ins. Co., Inc.*, No. 3:16-CV-00956-M, 2017 WL 958608, at *3 (N.D. Tex. Mar. 13, 2017) ("Plaintiff does not dispute that the First Amended Complaint fails to identify any specific statements made by Defendant or one of its agents, or explain how the allegedly false statements were negligently made. Plaintiff also does not dispute that its First Amended Complaint fails to identify any specific agent who made an alleged misrepresentation. Plaintiff only generally alleges that Defendant misrepresented the existence of coverage under the insurance policy at issue. … This allegation is not sufficient to satisfy the time, place, contents, and identity standard of Rule 9(b).").

Plaintiffs' Original Petition fails to plausibly allege a representation made by Wright National in the course of its business, or in a transaction in which Wright National had a pecuniary interest; that Wright National supplied false information for the guidance of others in their business; that Wright National did not exercise reasonable care or competence in obtaining or communicating the information; and that the Peltiers suffered a pecuniary loss by justifiably relying on the representation.

-18-

Indeed, for the same reasons discussed above with respect to the Plaintiffs' Deceptive Trade Practices claim, which are incorporated by reference, the negligent misrepresentation claim fails to plausibly allege that the Peltiers suffered any pecuniary loss as a result of their justifiable reliance on any misrepresentation by Wright National. *See Spong*, 787 F.3d at 312 (holding that the issuance of SFIP by WYO Company was not a representation on which the plaintiffs could rely as a matter of law); *Lobeck*, 2017 WL 923387, at *1 (insured under SFIPs could not have reasonably relied on alleged misrepresentations by WYO Program Carriers that her property was insurable).[9]

And similar to the Deceptive Trade Practices claim, Plaintiffs' negligent misrepresentation claim falls far short of satisfying Rule 9(b)'s heightened pleading requirements, and plainly fails to allege with specificity and particularity the time, place, and contents of any false representation by Wright National; the identity of the person making the misrepresentation and what he obtained thereby; or the "who, what, when, where, and how" of any false information or misrepresentations attributable to Wright National.

In sum, Plaintiffs' negligent misrepresentation claim should be dismissed for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and for failure to

---

[9] Moreover, insofar as Plaintiffs' purported state law tort claims (including the negligent misrepresentation claim) allege only an economic loss arising out of the SFIP between Plaintiffs and Wright National, these claims are barred by Texas' economic loss rule, which provides "when a plaintiff alleges only an economic loss arising out of a contractual relationship between the parties, the plaintiff is precluded from proceeding under a [tort] cause of action[.]" *Drake v. Bank of Am. Corp.*, No. CV H-15-1639, 2016 WL 6909287, at *5–6 (S.D. Tex. Mar. 9, 2016) (citing *Sanghera v. Wells Fargo Bank, N.A.*, 2012 WL 555155 at *5 (N.D. Tex. 2012); *Hayes v. Bank of Am., N.A.*, No. 4:13–CV–760–A, 2014 WL 308129, at *5 (N.D. Tex. Jan. 27, 2014)("because plaintiff's tort claims for fraud and negligent misrepresentation "flow solely from the note and deed of trust," they are barred by the economic loss rule and must be dismissed")).

satisfy the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure.

### III. <u>Conclusion and Prayer for Relief</u>

WHEREFORE, the premises considered, Defendant Wright National Flood Insurance Company prays that this Honorable Court grant Wright National's Motion to Dismiss pursuant to Fed. R. Civ. P. 9(b) and 12(b)(6), and dismiss this action with prejudice.

Dated:  June 29, 2017                    Respectfully submitted,

**BAKER & HOSTETLER, LLP**

By:      /s/  *Bradley K. Jones*
             Bradley K. Jones
             State Bar No. 24060041
             Federal ID No. 931122
             811 Main Street, Suite 1100
             Houston, Texas 77002
             Telephone:    (713) 751-1600
             Facsimile:    (713) 751-1717
             E-mail:  bkjones@bakerlaw.com

AND

**FREEBORN & PETERS LLP**
Theodore I. Brenner (VSB # 17815)
Alexander S. de Witt (VSB # 42708)
Joel W. Morgan (VSB # 65761)
411 East Franklin Street, Suite 200
Richmond, VA 23219
Telephone:    (804) 644-1300
Facsimile:    (804) 644-1354
E-mail: tbrenner@freeborn.com
E-mail: adewitt@freeborn.com
E-mail: jwmorgan@freeborn.com

**COUNSEL FOR DEFENDANT WRIGHT
NATIONAL FLOOD INSURANCE COMPANY**

## CERTIFICATE OF SERVICE

I hereby certify that on June 29, 2017, a true copy of the foregoing MOTION TO DISMISS AND SUPPORTING MEMROANDUM OF LAW has been served upon all parties or their attorneys contemporaneously with or before the filing of this pleading, in a manner authorized by Federal Rule of Civil Procedure 5(b)(1), using this Court' CM/ECF system.

             */s/ Bradley K. Jones*
             Bradley K. Jones