### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF TEXAS
### GALVESTON DIVISION

| | | |
|---|---|---|
| **MICHAEL PELTIER AND** | § | |
| **KELLY PELTIER** | § | |
| **Plaintiffs,** | § | |
| | § | **CA NO. 3:17-cv-00202** |
| **STGJ ENTERPRISES, LLC** | § | |
| **D/B/A SMI AGENCY, LERETA, LLC,** | § | |
| **AND WRIGHT NATIONAL FLOOD** | § | |
| **INSURANCE** | § | |
| **Defendants.** | | |

### PLAINTIFFS' FIRST AMENDED COMPLAINT

**TO THE HONORABLE JUDGE OF SAID COURT:**

**NOW COME** Michael Peltier and Kelly Peltier, hereinafter called Plaintiffs, complaining of and about STGJ Enterprises, LLC d/b/a SMI Agency, LERETA, LLC and Wright National Flood Insurance, hereinafter called Defendants, and for cause of action show unto the Court the following:

### I.
### DISCOVERY CONTROL PLAN LEVEL
### (for State Court purposes)

1.    Plaintiffs intend that discovery be conducted under Discovery Level 2.

### II.
### PARTIES AND SERVICE

2.    Plaintiffs, Kelly Peltier and Michael Peltier, are Individuals whose residence is in Galveston County, Texas.

3.      Defendant STGJ Enterprises, LLC d/b/a SMI Agency (referred to further as SMI), is a Texas limited liability.   This Defendant was served by service on its registered agent, Ingrid Marie D'Anna or member Julia F. Shaw.   This Defendant has entered an appearance through its attorney of record and has filed its Answer and Cross Claim prior to removal to this Court.

4.      Defendant LERETA, LLC, a Delaware Limited Liability Company, engages in business in the State of Texas and in Galveston County.   Service by U.S. Mail return receipt requested was attempted on this Defendant by mail to its registered agent, Paracorp Incorporated, at 3610-2 N. Josey Ln., Carrolton, TX.   That Citation was returned to the State Court as undeliverable.   This Defendant will be served through personal service on its Registered Agent.

5.      Defendant Wright National Flood Insurance is a Corporation based in Texas and is organized under the laws of the State of Texas.   Service has been made on its registered agent of the corporation, CT Corporation System, at 1999 Bryan St., Ste.   900, Dallas, TX 75201.   This Defendant has entered its appearance through Counsel and has filed its Answer and Other pleadings including the Removal of the State Court Proceeding to this Court.

### III.
### JURISDICTION AND VENUE

6.      The Defendant Wright has removed this Proceeding to the United States District Court for the Southern District of Texas based on Federal Question/Preemption

376914.4

as asserted in its Notice of Removal.   The Plaintiffs have challenged that Removal in their Motion to Remand filed August 2, 2017.

7.      For State Court purposes only, pursuant to Rule 47, Texas Rules of Civil Procedure, Plaintiffs state they seek monetary relief of more than $100,000 but not more than $200,000.

8.      Venue in Galveston County and in the Galveston Division of the United States District Court for the Southern District of Texas is proper because all or a substantial part of the events or omissions giving rise to this lawsuit occurred in Galveston County, Texas.

9.      This First Amended Complaint is timely filed pursuant to the hearing minutes of July 24, 2017.

## IV.
## SUMMARY OF FACTS

10.     In early 2015, Plaintiffs, who had lived their lives hundreds of mile north of the Texas Gulf Coast, looked into moving to the Gulf Coast with particular interest in Galveston, Texas.

11.     Plaintiffs began researching the housing market and located a prospective suitable property at 2705 Ave O, Galveston, TX 77550 (the "Property").

12.     The Plaintiffs were not familiar with the types of insurance required and the associated costs for a home on the Texas Gulf Coast.

13.    They contacted Defendant SMI in order to get a firm quote on insurance for their prospective purchase of the Property.

14.    Defendants SMI, LERETA and Wright each hold themselves out as specialists in consumer and homeowner insurance services and products.

15.    Defendant SMI explained to Plaintiffs the insurable risks for which they could provide insurance and the various rates, the location of their home and how it affected risk of loss and cost of insurance, the insurance they could provide and the costs of that insurance for the Property to have the home insured properly. The Defendants justifiably relied on the representations made to them by Defendant SMI regarding the flood risk and the premium connected to that risk.

16.    As Plaintiffs later discovered, the information provided to them by Defendant SMI was based in whole or in part on information Defendants LERETA and Wright provided.

17.    Based on the advice, recommendations and insurance quotes provided through Defendants, Plaintiffs made the decision to close on the Earnest Money Contract and acquire the Property.

18.    Within months, Plaintiffs learned that the Defendants had misrepresented the flood risk and associated insurance costs and had misled them into a more expensive financial transaction than they intended to enter into.

19.    They also learned that their property was in a high risk flood area and what they would have to pay for their flood insurance would increase by over $3,000 per year.

## V.
## FACTUAL BACKGROUND
## EARNEST MONEY CONTRACT
## AND INSURANCE QUOTE

20.     The Plaintiffs in searching for a home on the Texas Gulf Coast found one in Galveston.

21.     On April 16, 2015 the Plaintiffs entered into an Earnest Money Contract with the owner of the property at 2705 Ave O, Galveston, Texas.

22.     The Earnest Money Contract was for $275,000.00 and called for $55,000.00 payable at closing and the balance of the Earnest Money Contract ($220,000.00) to be financed.

23.     The Earnest Money Contract was contingent on Plaintiffs securing third party financing with an interest rate not to exceed 4.25% for a 30 year amortization and that the property satisfy the lender's underlying requirement for, among other things, insurability during the 30 year note.

24.     In the Seller's Disclosure, the seller identified that the property was in a 100 year flood plain but did not provide any information about flood insurance.

25.     As part of their efforts to assure that this purchase of a home in Galveston and relocation to the Texas Gulf Coast, the Plaintiffs sought advice from Defendant SMI regarding insurance requirements for and the cost of such insurance.

26.     Defendant SMI gave them advice on the different types of insurance they would, the risks of loss they would face in the location they had selected and provided quotes for windstorm, homeowners/multi perils and flood

## VI.
## FLOOD RISK
## AND INSURANCE

27.     On Information and believe, in response to an inquiry and on behalf of Plaintiffs by Defendant SMI, Defendant Wright Flood and or Defendant LERETA provided information to Defendant SMI on the Flood risk and cost of flood insurance for the Property with Limits of $250,000.00 (building) and $100,000.00 (contents).

28.     The Defendant gave the Plaintiffs the two quotes for insurance for the Property with a flood premium of $430 for the limit stated above before the Plaintiffs closed on their purchase (see Exhibit "A" and "B).

29.     As reflected in Exhibits A and B, this quoted price for flood was submitted in combination with a quote for homeowners and windstorm.

30.     The Plaintiffs were also informed by Defendant SMI that even if there were subsequent revisions to the flood maps, their Property would be grandfathered and they would not be subjected to significant increases in premium caused by any such mapping changes.

31.     On information and belief, SMI's quote was based on not only on the professional conclusions of Defendant SMI but on the professional conclusions of and information provide through Defendants LERETA and/or Wright.

376914.4

32.     On information and belief, the information coming from Defendants LERETA and Wright included representations that the Property was located in a "preferred flood zone".

33.     Properties in Preferred flood zones have lower flood premiums than properties in flood prone areas in which flood insurance is available.

34.     On information and belief, Defendant Wright quoted to Defendant SMI that it would provide the requested flood insurance for the Property at the requested coverage levels for a cost of $430.00 for the annual premium.

35.     The Plaintiffs' reliance on the insurance professionals at Defendants SMI, LERETA and Wright for advice and pricing of these insurance products was reasonable.

36.     Such reliance was also in line with customary consumer reliance on such professional insurance advice.

37.     At the time of the purchase, the Peltiers were living primarily on a retirement income.

38.     The Plaintiffs carefully weighed the purchase price and other costs associated with owning the property at 2705 Ave O in deciding to purchase that home.

39.     The cost of the Property was at or near the top of their budget for such a purchase.

40.     The Peltiers, acting in reliance on the information they had been provided about the flood risk and insurance costs as described above closed on that purchase transaction on or about May 31, 2015.

376914.4

41.     That same date the Peltiers purchased the insurance quoted to them in the attached exhibits B, including the flood policy.

42.     The flood policy was issued by Defendant Wright, but was sold to them through the Defendant SMI.

## VII.
## DISCOVERY OF HIGHER FLOOD RISK
## AND TENFOLD PREMIUM INCREASE

43.     On July 17, 2015, just six weeks after the Plaintiffs had closed on their new home the Defendant Wright mailed the attached Cancellation Notice to them (Exhibit C, the "Cancellation Notice")

44.     Defendant Wright also sent a copy of the Cancellation Notice to Georgetown ATC LLC. which it knew as the first lienholder on the Property

45.     Defendant Wright knew that one of the requirements of the mortgage between Plaintiff and the Mortgagee was that it have and maintain flood insurance on the Property

46.     Defendant Wright knew that the cancellation by them of the Flood insurance was an event of default under the Mortgage requirements on the Property and would entitle the lien holder to foreclose on the Property.

47.      The Plaintiffs began efforts to find out what they could do to cure the Cancellation.

48.     As part of those efforts the Peltiers, first learned of the misrepresentations in flood risk and the price quotation.

49.     The Peltiers learned that not only was the premium misquoted but that the property was not in a "preferred zone".

50.     This meant that the property was in a zone at greater risk of loss in a flood.

51.     The Plaintiffs learned that to insure the Property for flood they would now have to pay $3,685 and would have a higher deductible.

52.     The Plaintiffs requested copies of the information that was relied on by the various Defendants in making their original representation to them about the Flood Risk and the flood insurance costs.

53.     As a result of the request, Plaintiffs were provided a form issued by Defendant LERETA which reflected a standard Flood Hazard Determination, FEMA Form 086-0-32, (4/12) (the "Flood Hazard Determination").

54.     While the form is dated July 2015, it was represented to Plaintiffs that the information on the form is the information that the Defendants generated and relied on in making their representations to Plaintiff the previous year.

55.     The Flood Hazard Determination recited that "Flood insurance is available…" Regular Program".

56.     The Flood Hazard Determination also made the "Determination" that the property is not in a special flood hazard area (See section D, attached Exhibit "A" the "Determination").

57.     The Determination further recited that flood insurance is not required by the Flood Disaster Protection Act of 1973.

376914.4

9

58.    This Determination document was from Defendant LERETA and submitted to the Defendant Wright.

59.    The Determination further contain the additional statement that the Determination is "based on examining the NFIP Map, and Federal Emergency Management revision to it, and any other information needed to locate the building/mobile home on the NFIP map".

60.    The information stated in the Determination as described above is not the type of information which average consumers or prospective homeowners such as the Plaintiffs can secure and interpret without professional assistance such as that provided to Plaintiffs by the Defendant SMI.

61.    The Defendants each knew of the likelihood that the consumer/prospective homeowner would rely on them for the information contained in the Determination.

62.    The Determination was accompanied by a map (the "Map") which, on information was prepared by LERETA which states that the Property is not in a Special Flood Hazard Area and no Flood Insurance is Required

63.    On information and belief Defendant LERETA made the information on the Determination and the Map available to Defendant SMI and Defendant Wright at the time of the initial inquiries by Plaintiff and quotes produced by Defendant SMI and Wright in April 2015 regarding the flood risk and flood insurance Cost.

64.    The Determination and the Map were only provided to the Plaintiffs in July 2015 after they were given notice their existing flood insurance would be cancelled.

65.     While the Determination and Map provided in July supported the lower flood risk and premiums, the Defendants represented they were in error and that Plaintiffs would have to bear the burden and expense of the erroneous information Defendants provided.

66.     Plaintiffs are now in a home in a higher flood risk than they had expected to purchase.   As such the resale value of the home will be adversely affected.

67.     In order to keep their home and mortgage, Plaintiffs now are required to purchase a higher risk and higher cost flood policy.   This higher insurance cost is not only a financial burden on a monthly basis but will affect the resale value of the home.

68.     The lender for the Plaintiffs has required them to purchase the higher risk and more costly flood insurance in order to maintain the mortgage through which they had purchased the property.

## VIII.
## DECEPTIVE TRADE PRACTICES

69.     As described herein, the Defendants engaged in certain false, misleading and deceptive acts, practices and/or omissions actionable under the Texas Deceptive Trade Practices - Consumer Protection Act (Texas Business and Commerce Code, Chapter 17.41, et seq.), as alleged herein below.

70.     Defendants engaged in an unconscionable action or course of action to the detriment of Plaintiffs as that term is defined by Section 17.45(5) of the Texas Business

376914.4

and Commerce Code, by taking advantage of the lack of knowledge, ability, experience, or capacity of Plaintiffs to a grossly unfair degree.

71.     Plaintiffs would show that the acts of Defendant SMI violated the following subsections of §17.46 (b) (5) of the Texas Business and Commerce Code:

> (5) causing confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services;(5) representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which the person does not;

72.     The acts, practices and/or omissions complained of were the producing cause of Plaintiffs' damages

73.     Plaintiffs timely notified Defendants of such complaint pursuant to Section 17.505(a) of the Texas Business and Commerce Code by letter dated February 22, 2016,

74.     All conditions precedent to the filing of this suit have been satisfied or waived.

## IX.
## TEXAS INSURANCE CODE

75.     The conduct of Defendants further violates Sections 541.051 (1) and 541.061  Texas Insurance Code.

76.     The Defendants have committed an unfair method of competition or an unfair or deceptive act or practice  in the business of insurance by making, issuing or circulating an estimate, illustration or statement misrepresenting with respect to a policy to be issued:

376914.4

a.      The terms of the policy; and

b.      The benefits or advantages promised by the policy.

77.    The Defendants have committed an unfair method of competition or an unfair or deceptive act or practice  in the business of insurance by misrepresenting an insurance policy by:

a.      Making untrue statements of material fact;

b.      Failing to state a material fact necessary to make other statements made not misleading, considering the circumstances under which the statements were made;

c.      Making a statement in a manner that would mislead a reasonable prudent person to a false conclusion of a material fact; and

d.      Failing to disclose a matter required by law to be disclosed.

78.    Plaintiffs timely notified Defendants of such complaint

79.    All conditions precedent to the filing of this suit have been satisfied or waived.

## X.
## NEGLIGENT MISREPRESENTATION

80.    As more fully described above, Defendants supplied false information in the course of their business, profession or employment, or in the course of a transaction in which Defendants have a pecuniary interest

81.     Such information was supplied by Defendants for the guidance of Plaintiffs in the transactions described hereinabove.   Defendants failed to exercise reasonable care or competence in obtaining or communicating such information.

82.     Plaintiffs suffered pecuniary loss in the terms of additional premiums, past and future and face loss from have a less complete form of flood insurance.

83.     Such damages are proximately caused by Plaintiffs' justifiable reliance on such information.

84.     The conduct of Defendants as describer here constitutes negligent misrepresentation against Defendants (See, Federal Land Bank Association of Tyler v. Sloane, 825 S.W.2d 439 (Tex. 1991).

## XI.
## ECONOMIC AND ACTUAL DAMAGES

85.     Plaintiffs premiums for insurance have increased.   They face a greater risk of under insured risk of loss and a negative impact on the resale value of their home.   .

86.     The conduct of the Defendants described above are both the producing and proximate cause of their damages.

87.     Plaintiffs sustained the following economic and actual damages as a result of the actions and/or omissions of Defendants described hereinabove:

>       a.      Out-of-pocket expenses in the past, including but not limited to the cost of a flood insurance policy at the "non-preferred" rate versus the cost of the policy as represented;

b.    Future expenses for the life of the loan which Plaintiffs will, in all reasonable probability, incur for the cost of a flood insurance policy at the "non-preferred" rate versus the cost of the policy as represented;

c.    Future losses caused by flood but which are insured by a less comprehensive coverage than that which was originally sold to Plaintiffs; and

d.    Diminished resale value of home due to the differential flood risk and insurance costs.

## XII.
## ATTORNEY'S FEES

88.    Plaintiffs are further entitled to all costs and reasonable and necessary attorney's fees incurred by or on behalf of Plaintiffs herein in pursuit of their DTPA and Insurance Code violations, including all fees necessary in the event of an appeal of this cause to the Court of Appeals and the Supreme Court.

## PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiffs, Michael Peltier and Kelly Peltier, respectfully pray that judgment be entered for the Plaintiffs against Defendants, jointly and severally, for the economic and actual damages requested hereinabove in an amount in excess of the minimum jurisdictional limits of the Court, together with prejudgment and post-judgment interest at the maximum rate allowed by

376914.4

law, attorney's fees, costs of court, and such other and further relief to which the Plaintiffs

may be entitled at law or in equity, whether pled or unpled.

Respectfully submitted,

**GREER, HERZ & ADAMS, L.L.P.**

By:

**John A. Buckley, Jr.**
State Bar No. 03300500
So. Dist. of Texas No. 7601
GREER, HERZ & ADAMS, L.L.P.
2525 South Shore Blvd., Ste. 203
League City, Texas   77573
(409) 797-3200 (Telephone)
(866) 409-7178 (Facsimile)
jbuckley@greerherz.com

Ramzey Zein-Eldin
State Bar No. 22256400
Admitted Pro Hac Vice
6511 Stewart Road, Suite 4
P. O. Box 3951
Galveston, Texas   77552
(409) 744-4357 (Telephone)
(409) 740-0780 (Facsimile)
Ramzey543@gmail.com

Counsel for PLAINTIFFS
MICHAEL PELTIER AND
KELLY PELTIER

376914.4

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing document was served on the _7 th_ day of _August_, 2017 upon the following counsel of record via email:

Scott R. Breitenwischer
Royston, Rayzor, Vickery & Williams, L.L.P.
Kamilla Shlimak
1600 Smith Street, Suite 5000
Houston, TX 77002
(713) 224-8380 Telephone
(713) 225-9945 Facsimile
scott.breitenwischer@roystonlaw.com
kamilla.shlimak@roystonlaw.com
Attorneys for Defendant,
STGJ Enterprises, LLC D/B/A SMI Agency

Bradley K. Jones
Baker & Hostetler, LLP
811 Main Street, Suite 1100
Houston, TX 77002
bkjones@bakerlaw.com
and
Alexander Spotswood de Witt
Freeborn & Peters LLP
411 East Franklin Street, Suite 200
Richmond, VA 23219
adewitt@freebom.com
Attorneys for Defendant Wright National
Flood Insurance Company

Alexander C. McGilvray, Jr.
Clark & Trevithick
800 Wilshire Boulevard, 12th Floor
Los Angeles, CA 90017
amcgilvray@clarktrev.com
Attorney for Defendant LERETA, LLC

John A. Buckley, Jr.

376914.4

17