## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## GALVESTON DIVISION

| | | |
|---|---|---|
| **MICHAEL PELTIER and** | § | |
| **KELLY PELTIER** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | **CASE NO.  3:17-cv-00202** |
| **v.** | § | |
| | § | |
| **STGJ ENTERPRISES, LLC D/B/A** | § | |
| **SMI AGENCY, LERETA, LLC, and** | § | |
| **WRIGHT NATIONAL FLOOD** | § | |
| **INSURANCE,** | § | |
| | § | |
| **Defendants.** | § | |

## MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED
## COMPLAINT BY DEFENDANT WRIGHT NATIONAL FLOOD
## <u>INSURANCE COMPANY, AND SUPPORTING MEMORANDUM OF LAW</u>

**TABLE OF CONTENTS**

**Page**

I. STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING     1

II. STATEMENT OF ISSUES AND STANDARD OF REVIEW     1

III. SUMMARY OF THE ARGUMENT     3

IV. STATEMENT OF ALLEGED FACTS     4

V. ARGUMENT     7

      1. The First Amended Complaint Fails To State A Claim     7
         Against Wright National For Violation Of The Texas
         Deceptive Trade Practices Act

      2. The First Amended Complaint Fails To State A Claim     18
         Against Wright National Under The Texas Insurance Code

      3. The First Amended Complaint Fails To State A Claim     23
         Against Wright National For Negligent Misrepresentation

VI. CONCLUSION AND PRAYER FOR RELIEF     25

**CERTIFICATE OF CONFERENCE**

This will certify that prior to filing this motion, undersigned counsel conferred with counsel for the Plaintiffs regarding the substance of the relief requested (i.e., dismissal of this action as to Wright National).  The relief requested herein by Wright National is opposed.

## I.    STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING

In the First Amended Complaint, Plaintiffs Michael Peltier and Kelly Peltier ("Plaintiffs" or "the Peltiers") have alleged three related state law claims under the Texas Deceptive Trade Practices Act and Texas Insurance Code, and for negligent misrepresentation, arising out of the purchase of a Standard Flood Insurance Policy ("SFIP") issued by Wright National Flood Insurance Company ("Wright National"), a Write-Your-Own ("WYO") Program carrier participating in the U.S. Government's National Flood Insurance Program ("NFIP") pursuant to the National Flood Insurance Act of 1968, as amended.  In accordance with the Court's Minute Entry entered July 24, 2017 (Dkt. 20), Plaintiffs filed their First Amended Complaint on August 7, 2017. Wright National hereby moves to dismiss the First Amended Complaint pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure.

## II.    STATEMENT OF ISSUES AND STANDARD OF REVIEW

The issue presented by the instant Motion to Dismiss is whether, pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure, the First Amended Complaint fails to state a claim upon which relief can be granted against Wright National for (i) violation of the Texas Deceptive Trade Practices Act, (ii) violation of Section 541 of the Texas Insurance Code, and (iii) negligent misrepresentation.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Edionwe v. Bailey*, 860 F.3d 287, 291 (5th Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted)). "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)).

In this case, Plaintiffs' First Amended Complaint purports to allege claims under the Texas DTPA and Section 541 of the Texas Insurance Code.  "In federal court, claims under the Texas Deceptive Trade Practices Act are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b)." *Lopez v. United Prop. & Cas. Ins. Co.*, 197 F.Supp.3d 944, 951–52 (S.D. Tex. 2016) (citing *Omni USA, Inc. v. Parker–Hannifin Corp.*, 798 F.Supp.2d 831, 836 (S.D. Tex. 2011); *Berry v. Indianapolis Life Ins. Co.*, 608 F.Supp.2d 785, 800 (N.D. Tex. 2009) (applying Rule 9(b) to claims under the DTPA and Chapter 541 of the Texas Insurance Code)).

The First Amended Complaint also purports to allege a related claim for negligent misrepresentation, which likewise is subject to the heightened pleading requirements of Rule 9(b).  *See Peacock v. AARP, Inc.*, 181 F.Supp.3d 430, 435 (S.D. Tex. 2016) ("Claims alleging violations of the Texas Insurance Code and the DTPA and those asserting fraud, fraudulent inducement, fraudulent concealment, and negligent misrepresentation are subject to the requirements of Rule 9(b)." (citation omitted)).

### III.   SUMMARY OF THE ARGUMENT

The First Amended Complaint fails to state a plausible claim for relief against Wright National for (i) violation of the Texas Deceptive Trade Practices Act, (ii) violation of Section 541 of the Texas Insurance Code, and (iii) negligent misrepresentation.   All three claims are predicated on alleged deceptive practices and misrepresentations, and therefore the heightened pleading standard prescribed by Fed. R. Civ. P. 9(b) applies.   All three claims fall far short of alleging (i) the particulars of time, place, and contents of any false representations by Wright National; (ii) the identity of the person making the misrepresentation and what he obtained thereby; or (iii) the "who, what, when, where, and how" of any alleged fraud or misrepresentation by Wright National.

### IV.   STATEMENT OF ALLEGED FACTS

The First Amended Complaint ("FAC") alleges in part that "[i]n early 2015, Plaintiffs … looked into moving to the Gulf Coast with particular interest in Galveston, Texas … [and] contacted Defendant SMI in order to get a firm quote on insurance for their prospective purchase of the Property" (FAC ¶¶ 10, 13).   As alleged, "Defendant SMI explained to Plaintiffs the insurable risks for which they could provide insurance and the various rates, the location of their home and how it affected risk of loss and costs of insurance, the insurance they could provide and the costs of that insurance for the Property to have the home insured properly." (FAC ¶ 15).   Plaintiffs claim that they "justifiably relied on the representations made to them by Defendant SMI regarding the flood risk and the premium connected to that risk." (FAC ¶ 15).

3

As alleged, "… the information provided to [Plaintiffs] by Defendant SMI was based in whole or in part on information Defendants LERETA and Wright provided." (FAC ¶ 16).  Plaintiffs allege that "[b]ased on the advice, recommendations and insurance quotes provided through Defendants, Plaintiffs made the decision to close on the Earnest Money Contract and acquire the Property." (FAC ¶ 17).  Plaintiffs claim that "[w]ithin months, Plaintiffs learned that the Defendants had misrepresented the flood risk and associated insurance costs and had misled them into a more expensive financial transaction than they intended to enter into." (FAC ¶ 18).  As alleged, "[t]hey also learned that their property was in a high risk flood area and what they would have to pay for their flood insurance would increase by over $3,000 per year." (FAC ¶ 19).

Plaintiffs allege that "[o]n April 16, 2015 [they] entered into an Earnest Money Contract with the owner of the property at 2705 Ave O, Galveston, Texas." (FAC ¶ 21).  They allege that "[i]n the Seller's Disclosure, the seller identified that the property was in a 100 year flood plain but did not provide information about flood insurance." (FAC ¶ 22).  Plaintiffs claim that "[a]s part of their efforts … [they] sought advice from Defendant SMI regarding insurance requirements for and the cost of such insurance", and that "Defendant SMI gave them advice on the different types of insurance they would [sic], the risks of loss they would face in the location they had selected and provided quotes for windstorm, homeowners/multi perils and flood[.]" (FAC ¶¶ 25-26).

Plaintiffs allege that SMI Agency "gave the Plaintiffs the two quotes for insurance for the Property with a flood premium of $430 … before the Plaintiffs closed on their purchase[.]" (FAC ¶ 27).  Plaintiffs have filed two documents purportedly generated by

SMI Agency as Exhibits A and B to the Complaint, alleging that "[a]s reflected in Exhibits A and B, this quoted price for flood was submitted in combination with a quote for homeowners and windstorm." (FAC ¶ 28).  Plaintiffs further allege that they were "informed by Defendant SMI that even if there were subsequent revisions to the flood maps, their Property would be grandfathered and they would not be subjected to significant increases in premium caused by any such mapping changes." (FAC ¶ 30).

Plaintiffs concede that they did not communicate directly with Wright National, instead alleging equivocally that "[o]n Information and believe [sic], in response to an inquiry and on behalf of Plaintiffs by Defendant SMI, Defendant Wright Flood ***and or*** Defendant LERETA provided information to Defendant SMI on the Flood risk and cost of flood insurance for the Property with Limits of $250,000 (building) and $100,000 (contents)." (FAC ¶ 27 (emphasis added)).  Plaintiffs further allege vaguely that "[o]n information and belief, SMI's quote was based on not only on the professional conclusions of Defendant SMI but on the professional conclusions of and information provide through Defendants LERETA ***and/or*** Wright." (FAC ¶ 31 (emphasis added)).  Plaintiffs further allege that "[o]n information and belief, the information coming from Defendants LERETA and Wright included representations that the Property was located in a 'preferred flood zone'", adding that "[p]roperties in Preferred flood zones have lower flood premiums than properties in flood prone areas in which flood insurance is available." (FAC ¶¶ 32-33).  Plaintiffs allege that "[o]n information and belief, Defendant Wright quoted to Defendant SMI that it would provide the requested flood insurance for

the Property at the requested coverage levels for a cost of $430.00 for the annual premium." (FAC ¶ 34).

Plaintiffs allege that on May 31, 2015 they closed on the purchase of the home in Galveston "acting in reliance on the information they had been provided about the flood risk and insurance costs as described above …" (FAC ¶ 40).  They allege that on "[t]hat same date the Peltiers purchased the insurance quoted to them in the attached exhibits B, including the flood policy." (FAC ¶ 41).  They allege that "[t]he flood policy was issued by Defendant Wright, but was sold to them through the Defendant SMI." (FAC ¶ 42).

Plaintiffs allege that on July 17, 2015 Wright National mailed a cancellation notice to Plaintiffs and their mortgagee. (FAC ¶¶ 43-44; FAC Exhibit C).  Plaintiffs claim that they subsequently "learned that not only was the premium misquoted but that the property was not in a 'preferred zone'" and "that to insure the Property for flood they would now have to pay $3,685 and would have a higher deductible." (FAC ¶¶ 49, 51).

Plaintiffs allege that upon request, in July 2015 they "were provided a form issued by Defendant LERETA which reflected a standard Flood Hazard Determination, FEMA Form 086-0-32, (4/12) (the 'Flood Hazard Determination')." (FAC ¶¶ 53, 64).  Plaintiffs allege that the Flood Hazard Determination "recited that 'Flood insurance is available …' Regular Program'"; "made the 'Determination' that the property is not in a special flood hazard area"; "recited that flood insurance is not required by the Flood Disaster Protection Act of 1973"; and stated that "the Determination is 'based on examining the NFIP Map, and Federal Emergency Management revision to it, and any other information needed to locate the building/mobile home on the NFIP map."  (FAC ¶¶ 55-57, 59).

6

Plaintiffs further allege that "[t]he Determination was accompanied by a map (the 'Map') which, on information was prepared by LERETA which states that the Property is not in a Special Flood Hazard Area and no Flood Insurance is Required." (FAC ¶ 62).  Plaintiffs allege that "[o]n information and belief Defendant LERETA made the information on the Determination and the Map available to Defendant SMI and Defendant Wright at the time of the initial inquiries by Plaintiff and quotes produced by Defendant SMI and Wright in April 2015 regarding the flood risk and flood insurance Cost." (FAC ¶ 63).

Plaintiffs allege that they "sustained the following economic and actual damages as a result of the actions and/or omissions of Defendants described hereinabove:"

    a.  Out-of-pocket expenses in the past, including but not limited to the cost of a flood insurance policy at the "non-preferred" rate versus the cost of the policy as represented;

    b.  Future expenses for the life of the loan which Plaintiffs will, in all reasonable probability, incur for the cost of a flood insurance policy at the 'non-preferred' rate versus the cost of the policy as represented;

    c.  Future losses caused by flood but which are insured by a less comprehensive coverage than that which was originally sold to Plaintiffs; and

    d.  Diminished resale value of home due to the differential flood risk and insurance costs.

(FAC ¶ 87).

## V.   <u>ARGUMENT</u>

### 1. **The First Amended Complaint Fails To State A Claim Against Wright <u>National For Violation Of The Texas Deceptive Trade Practices Act</u>.**

The First Amended Complaint purports to allege a "Deceptive Trade Practices" claim against Wright National.  Plaintiffs allege that "the Defendants engaged in certain

false, misleading and deceptive acts, practices and/or omissions actionable under Texas Deceptive Trade Practices – Consumer Protection Act (Texas Business and Commerce Code 17.41, et seq.), as alleged herein below"; that "Defendants engaged in an unconscionable action or course of action to the detriment of Plaintiffs as that term is defined by Section 17.45(5) of the Texas Business and Commerce Code, by taking advantage of the lack of knowledge, ability, experience, or capacity of Plaintiffs to a grossly unfair degree"; that "Plaintiffs would show that the acts of Defendant SMI violated the following subsections of § 17.46(b)(5) of the Texas Business and Commerce Code …" [quoting § 17.46(b)(5)]; and that "[t]he acts, practices and/or omissions complained of were the producing cause of Plaintiffs' damages." (FAC ¶¶ 69-72).  The First Amended Complaint fails to state an actionable claim against Wright National under the Texas Deceptive Trade Practices Act (DTPA), and likewise fails to satisfy Rule 9(b)'s heightened pleading requirements.

"To maintain a cause of action under the Texas DTPA, [the plaintiff] must establish that (1) it is a consumer under the DTPA with respect to its claim against [the defendant]; (2) [the defendant] committed a false, misleading, or deceptive act under § 17.46(b) of the DTPA, breached an express or implied warranty, or engaged in an unconscionable action or course of action; and (3) these acts were the producing cause of [the plaintiff's] actual damages." *Brittan Commc'ns Int'l Corp. v. Sw. Bell Tel. Co.*, 313 F.3d 899, 907 (5th Cir. 2002) (citation omitted).

"The DTPA defines 'consumer' as 'an individual, partnership, [or] corporation ... who seeks or acquires by purchase or lease, any goods or services.'" *Brittan, supra*, 313

8

F.3d at 907 (citing TEX. BUS. & COM. CODE ANN. § 17.45(4) (Vernon 2002)).  "To qualify as a consumer, and thus to have standing to sue under the DTPA, [plaintiff] must satisfy two requirements: (1) it must have sought or acquired goods or services by purchase or lease; and (2) the goods or services purchased or leased must form the basis of the complaint." *Id.* (citing *Cameron v. Terrell & Garrett, Inc.,* 618 S.W.2d 535, 539 (Tex. 1981)).  "If either requirement is lacking, the person aggrieved by a deceptive act or practice must look to the common law or some other statutory provision for redress." *Id.* "For liability to be imposed under the DTPA, the defendant's deceptive conduct must have occurred 'in connection with' a consumer transaction." *Id.* (citing *Amstadt v. U.S. Brass Corp.,* 919 S.W.2d 644, 649 (Tex. 1996)).

"Section 17.46(b) of the DTPA makes unlawful false, misleading, or deceptive acts or practices in the conduct of any trade or commerce." *McPeters v. LexisNexis*, 910 F.Supp.2d 981, 987 (S.D. Tex. 2012), *on reconsideration,* 11 F.Supp.3d 789 (S.D. Tex. 2014).  "Detrimental reliance is an essential element for proving false, misleading or deceptive acts under the DTPA." *Id.* (citing Tex. Bus. & Com. Code § 17.50(a)(1)(B)).

As alleged, the First Amended Complaint falls far short of alleging a plausible claim against Wright National for violating the Texas DTPA, for multiple reasons.

First, the Amended Complaint is devoid of factual allegations plausibly demonstrating that Wright National engaged in any false, misleading, or deceptive acts, or that these acts constituted a producing cause of plaintiffs' alleged damages.  Instead, as alleged, Plaintiffs dealt solely with SMI Agency in connection with the purchase of the subject Standard Flood Insurance Policy.  Plaintiffs allege that they "contacted Defendant

SMI in order to get a firm quote on insurance for their prospective purchase of the Property" (FAC ¶ 13).  "Defendant SMI explained to Plaintiffs the insurable risks for which they could provide insurance and the various rates, the location of their home and how it affected risk of loss and costs of insurance, the insurance they could provide and the costs of that insurance for the Property to have the home insured properly." (FAC ¶ 15).  Plaintiffs allege that they "justifiably relied on the representations made to them by Defendant SMI regarding the flood risk and the premium connected to that risk." (*Id.*).  Plaintiffs claim that "[they] sought advice from Defendant SMI regarding insurance requirements for and the cost of such insurance", and that "Defendant SMI gave them advice on the different types of insurance they would, the risks of loss they would face in the location they had selected and provided quotes for windstorm, homeowners/multi perils and flood[.]" (FAC ¶¶ 25-26).

Plaintiffs concede that they did not communicate directly with Wright National before purchasing the SFIP, instead alleging equivocally that "[o]n Information and believe [sic], in response to an inquiry and on behalf of Plaintiffs by Defendant SMI, Defendant Wright Flood *and or* Defendant LERETA provided information to Defendant SMI on the Flood risk and cost of flood insurance for the Property with Limits of $250,000 (building) and $100,000 (contents)." (FAC ¶ 27 (emphasis added)).  Plaintiffs further allege vaguely that "[o]n information and belief, SMI's quote was based on not only on the professional conclusions of Defendant SMI but on the professional conclusions of and information provide through Defendants LERETA *and/or* Wright." (FAC ¶ 31 (emphasis added)).  Rather than allege and distinguish any specific conduct of

10

or representations by each defendant, Plaintiffs merely lump all three defendants together and assert a boilerplate, formulaic claim against all defendants, which plainly fails to state a plausible claim under Rule 12(b)(6) or satisfy the heightened pleading requirements of Rule 9(b).  *See Spring St. Apts Waco, LLC v. Philadelphia Indem. Ins. Co.*, No. W-16-CA-00315-JCM, 2017 WL 1289036, at *5 (W.D. Tex. Apr. 6, 2017).

Indeed, as between Plaintiffs and Wright National, the only alleged transaction was Wright National's issuance of a SFIP in its capacity as a WYO Program carrier pursuant to the NFIP.  Pursuant to Congressional authorization found at 42 U.S.C. § 4071(a)(1), FEMA uses WYO companies like Wright National to aid it in its statutory duty to administer the NFIP.  *See also* 42 U.S.C. § 4081(a) (permitting FEMA's Director to enter into arrangements with private insurance companies in order to make use of their "facilities and services"); 44 C.F.R. § 62.23(a)-(d) (establishing the WYO program to permit private insurers to sell and administer Standard Flood Insurance Policies).[1] Wright National, as a WYO Program carrier, was authorized to issue the SFIP – which is a federal regulation found at 44 C.F.R. Pt. 61, App. A(1) – on behalf of the federal government pursuant to the "Arrangement" between itself and FEMA, set forth at 44 C.F.R. Pt. 62, App. A (2015).[2]  These forms of the flood policy are incorporated into the

---

[1] "Homeowners can purchase policies either directly from FEMA or from private insurers, which function as WYO providers and fiscal agents of the United States." *Jianhua Ling v. Farmers Ins. Grp.*, No. CV H-16-2961, 2017 WL 451222, at *3 (S.D. Tex. Feb. 2, 2017) (citing *Ferraro v. Liberty Mutual Fire Ins. Co.*, 796 F.3d 529, 531 (5th Cir. 2015) and 42 U.S.C. § 4071(a)(1)).  In this case, Plaintiffs purchased the subject SFIP from a WYO Company, Wright National.

[2] At all pertinent times, including the date the subject SFIP was issued by Wright National in its Capacity as a Write Your Own (WYO) company under the provisions of the NFIA,

11

Code of Federal Regulations at 44 C.F.R. § 61.13(a).  "[T]he exact terms and conditions of NFIP policies and eligibility for federal flood insurance are dictated by federal law." *Spong v. Fid. Nat. Prop. & Cas. Ins. Co.*, 787 F.3d 296, 299 (5th Cir. 2015).  Wright National cannot waive or alter or amend any of the provisions of the SFIP. *See* 44 C.F.R. § 61.13(d); 44 C.F.R. Pt. 61, App. A(1), Art. VII(D).  And at all pertinent times, Wright National's role as a WYO Program carrier (and as set forth in its Arrangement with FEMA) was to market, sell, administer, and handle claims under SFIPs that it was authorized to issue on behalf of the federal government in its "fiduciary" capacity as "fiscal agent" of the United States.  *See* 44 C.F.R. § 62.23(f); 42 U.S.C. § 4071(a)(1).  Plaintiffs have not plausibly alleged that Wright National did anything other than issue a SFIP and charge a premium for the SFIP based on the information Plaintiffs and their agent (SMI) supplied in their SFIP application, in accordance with the NFIP and its implementing regulations.  No actionable DTPA claim has been alleged against Wright National.[3]

---

Wright National issued SFIP policies under its own name and adjusted and paid claims under the SFIP pursuant to a Financial Assistance/Subsidy Arrangement ("the Arrangement") with FEMA.  Each Arrangement entered into by a WYO company was in the form and substance of the standard Arrangement, a copy of which was published in Title 44 of the Code of Federal Regulations (CFR) Part 62, Appendix A. See 44 CFR 62.23(a).  Effective December 23, 2016, FEMA issued a Final Rule to remove the Arrangement from the appendices of the NFIP regulations.  See Federal Register, Vol. 81, No. 226 (Nov. 23, 2016).

[3] All SFIPs contain the following provision: "*This policy* and all disputes arising from the handling of any claim under the policy are *governed exclusively by the flood insurance regulations issued by FEMA, the National Flood Insurance Act of 1968, as amended (42 U.S.C. 4001, et seq.), and Federal common law*." 44 C.F.R. pt. 61, app. A(1), art. IX (emphasis added).  Thus, insofar as the Plaintiffs' claims relate to the SFIP issued by Wright National, they are governed exclusively by the NFIA, the flood insurance

The terms and conditions of the SFIP are codified in the Code of Federal Regulations and are publicly available.  *See* 44 C.F.R. Pt. 61, App. A(1).  As a matter of law, Plaintiffs are presumed to have actual or constructive knowledge of the SFIP terms. *See Heckler v. Community Health Services*, 467 U.S. 51, 63 (1984) ("those who deal with the Government are expected to know the law and may not rely on the conduct of the conduct of government agents contrary to the law"); *Lobeck v. Licatino*, 678 Fed. Appx. 258, 259-60 (5th Cir., Mar. 7, 2017) (holding that SFIP insured could not have reasonably relied on alleged misrepresentations by WYO Program Carriers that her property was insurable, because plaintiff was "insured by the federal government through the NFIP", the WYO insurers "were acting as government agents", and plaintiff "was charged with the constructive knowledge that her property was located" in the Coastal Barrier Resources System, thereby rendering it ineligible for federally funded flood insurance).

The SFIP Agreement provides as follows:

The Federal Emergency Management Agency (FEMA) provides flood insurance under the terms of the National Flood Insurance Act of 1968 and its Amendments, and Title 44 of the Code of Federal Regulations.

We will pay you for direct physical loss by or from flood to your insured property if you:

1. Have paid the correct premium;
2. Comply with all terms and conditions of this policy; and
3. Have furnished accurate information and statements.

*We have the right to review the information you give us at any time and to revise your policy based on our review*.

---

regulations issued by FEMA, and federal common law, rather than state law.

44 C.F.R. Pt. 61, App. A(1), art. I (Agreement; emphasis added).  The SFIP includes the

Plaintiffs' flood insurance Application.   44 C.F.R. Pt. 61, App. A(1), art. II(B)(21)

(Definitions).  Pertinent here, the SFIP provides in pertinent part as follows:

> 3. Application. The statement made and signed by you or your agent in
> applying for this policy. The application gives information we use to
> determine the eligibility of the risk, the kind of policy to be issued, and the
> correct premium payment. The application is part of this flood insurance
> policy. For us to issue you a policy, the correct premium payment must
> accompany the application.

44 C.F.R. § Pt. 61, App. A(1), art. II(B)(3) (Definitions).  Thus, by its express terms, the

SFIP (itself a codified federal regulation) placed the onus squarely on the Plaintiffs (not

Wright National) to furnish accurate information and statements about the property to be

used to determine the eligibility of the risk, the kind of policy to be issued, and the

correct premium payment.  Insofar as the Plaintiffs' state law DTPA claim attempts to

shift that burden to Wright National, it fails to state a claim as a matter of federal law.

As noted above, "[d]etrimental reliance is an essential element for proving false,

misleading or deceptive acts under the DTPA." *McPeters*, 910 F.Supp.2d at 987.

However, as in *Spong, supra,* demonstrating "detrimental reliance is problematic" in this

case. 787 F.3d at 311.  Plaintiffs have failed to identify or allege any false, misleading or

deceptive acts by Wright National, nor have they plausibly alleged detrimental reliance

on any false, misleading or deceptive acts by Wright National.  At all pertinent times,

Wright National acted as "an intermediary for the Government." *Spong,* 787 F.3d at 308.

"The [Plaintiffs] applied for a flood insurance policy that was part of a federal program,

with the understanding that covered claims would be paid with federal funds." *Id.*  "[I]n

14

the federal flood insurance scheme," Wright National was merely "a conduit." *Id.* at 310.

FEMA uses Flood Insurance Rate Maps (FIRM) and other publicly available information

(including information contained in FEMA's Flood Insurance Manual) to determine flood

insurance eligibility, zoning and rating.  Plaintiffs could have contacted FEMA to obtain

a determination of whether the subject property was in a "preferred flood zone", and

could have consulted the maps publicly available.[4]  *See Spong,* 787 F.3d at 311 ("The

Spongs could have contacted FEMA or the Fish and Wildlife Service to obtain a

determination of whether their property was in the CBRS. They could have consulted the

maps publicly available.").  As a matter of federal law, it was incumbent on the Peltiers –

not Wright National – to determine whether the property was located in a "preferred

flood zone" and how the property's location would affect rating.

In *Spong,* the plaintiffs brought a Texas state court action against a flood insurer

(Fidelity) which participated in the NFIP, alleging *inter alia* that Fidelity had made

negligent misrepresentations regarding a flood insurance policy it sold them.  *Id.* at 298.

At issue was whether their property was located in the John H. Chafee Coastal Barrier

Resources System (CBRS).  *Id.* at 299.  If it was, then the NFIP prohibited Fidelity from

issuing a flood insurance policy for the property.  *Id.*  Fidelity (acting in its capacity as a

WYO Program Carrier under the NFIP) issued a SFIP insuring the Spongs' property.  *Id.*

at 298-99.  Years later, after Hurricane Ike destroyed their property, it was determined

that the property was located in the CBRS.  *Id.*  Accordingly, pursuant to federal

regulations and the terms of the SFIP, it was determined that the SFIP was void, and

---

[4] *See* https://www.msc.fema.gov/portal (FEMA Flood Map Service Center).

Fidelity denied the Spongs' claim. *Id.* at 301-02. The Spongs filed multiple Texas state law claims against Fidelity (negligence, negligent misrepresentations, Texas Insurance Code violations, Deceptive Trade Practices–Consumer Protection Act violations, gross negligence, fraud, fraud by non-disclosure, fraudulent inducement, and promissory estoppel) after Fidelity advised them that the SFIP was void from its inception because the property was ineligible for flood insurance under the NFIP. *Id.* at 307. The Fifth Circuit determined that these state law claims could not succeed in light of the U.S. Supreme Court's decisions in *Federal Crop Insurance Corp. v. Merrill*, 332 U.S. 380 (1947), and *Heckler v. Community Health Services of Crawford County,* 467 U.S. 51 (1984). The Fifth Circuit explained:

> In the present case, Fidelity is an intermediary for the Government. The Spongs applied for a flood insurance policy that was part of a federal program, with the understanding that covered claims would be paid with federal funds. The Coastal Barrier Resources Act provides that federal flood insurance cannot be issued for property in the CBRS. Federal regulations are also clear on this point. Under the rationale of *Merrill* and *Heckler,* the Spongs cannot claim ignorance of the statutes and regulations as an excuse for relying on Fidelity's issuance of a policy as a determination or representation that their property was not located in the CBRS.

*Spong*, 787 F.3d at 309 (footnotes omitted). The Fifth Circuit further noted that it was incumbent on the Spongs (not the WYO Program Carrier) to ascertain whether their property was eligible for SFIP coverage:

> The Spongs were seeking coverage that was to be provided from public funds. It was incumbent upon the Spongs to determine whether their property was eligible for a SFIP. In determining whether the property was within the CBRS and therefore eligible for a federal flood insurance policy, Fidelity was acting as the representative of the Government, not the Spongs. The Spongs could not reasonably rely on Fidelity to make that determination for them.

16

*Spong*, 787 F.3d at 309-10.   The Fifth Circuit acknowledged "the difficult position in which the Spongs find themselves." *Id.* at 311.  "However, [the Spongs] sought to obtain a federal insurance policy on property that, under federal law, is uninsurable." *Id.*  The Fifth Circuit therefore concluded that "the issuance of a policy by Fidelity was not a representation on which the Spongs could rely" as a matter of law.  *Id.* at 312; *see also Lobeck, supra,* 678 Fed. Appx. at 259-60.

Here, by comparison, the Peltiers sought to obtain a federal SFIP on property that (as alleged) was not located in a "preferred flood zone."  As in *Spong*, it was incumbent on the Peltiers (not Wright National which, like the WYO Companies in *Spong* and *Lobeck*, was acting as a "government agent") to ascertain whether the property was in a "preferred" or "non-preferred" flood zone.  As in *Spong*, the Peltiers could not reasonably rely on Wright National to make that determination for them.  Moreover, the issuance of the SFIP by Wright National for a premium that was rated based on the location of the property was not a representation on which the Peltiers could reasonably rely as a matter of law.  The SFIP – the terms of which Plaintiffs are charged with knowledge as a matter of federal law – obligated the Plaintiffs (not Wright National) to obtain and furnish accurate information and statements about the property to be used to determine the eligibility of the risk, the kind of policy to be issued, and the correct premium payment.

Moreover, "[i]n federal court, claims under the Texas Deceptive Trade Practices Act are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b)." *Lopez,* 197 F.Supp.3d at 951.  "At a minimum, Rule 9(b) requires allegations of the particulars of time, place, and contents of the false representations, as

well as the identity of the person making the misrepresentation and what he obtained thereby." *Id.*  "In other words, a plaintiff must plead the 'who, what, when, where, and how' of the fraud." *Id.*  The First Amended Complaint falls far short of satisfying Rule 9(b)'s heightened pleading requirements, and plainly fails to allege the time, place, and contents of any false representations by Wright National; or the identity of the person making the misrepresentation and what he obtained thereby; or the "who, what, when, where, and how" of any false, misleading, or deceptive act, or of any unconscionable action or course of action attributable to Wright National.[5]

### 2.   The First Amended Complaint Fails To State A Claim Against Wright National Under The Texas Insurance Code.

The First Amended Complaint also purports to allege a claim under the Texas Insurance Code.  Plaintiffs allege that "[t]he conduct of Defendants further violates Sections 541.051(1) and 541.061 Texas Insurance Code"; that "[t]he Defendants have committed an unfair method of competition or an unfair or deceptive act or practice in the business of insurance by making, issuing or circulating an estimate, illustration or

---

[5] "To prove an unconscionable action or course of action, a plaintiff must show that the defendant took advantage of his lack of knowledge and that the resulting unfairness was glaringly noticeable, flagrant, complete and unmitigated." *Brittan Commc'ns Int'l Corp. v. Sw. Bell Tel. Co.*, 313 F.3d 899, 907 (5th Cir. 2002) (citing *Bradford v. Vento*, 48 S.W.3d 749, 760 (Tex. 2001)).  "[P]roving unconscionability in a TDTPA case is difficult." *Strauss v. Ford Motor Co.*, 439 F.Supp.2d 680, 687–88 (N.D. Tex. 2006).  The First Amended Complaint merely alleges in a conclusory fashion that all "Defendants engaged in an unconscionable action or course of action to the detriment of Plaintiffs …" (FAC ¶ 70).  The First Amended Complaint is devoid of any facts to support such a formulaic recitation as to Wright National and plainly fails to allege a plausible claim that Wright National engaged in any "unconscionable action or course of action."  Moreover, dismissal is appropriate given the Peltiers' imputed knowledge regarding the property's location and flood zone classification, and the terms of the SFIP.  *See Spong v. Fid. Nat'l Prop. & Cas. Ins. Co.*, No. 16-41165, 2017 WL 2870989, at *4 (5th Cir. July 5, 2017).

statement misrepresenting with respect to a policy to be issued: a. The terms of the policy; and b. The benefits or advantages promised by the policy"; and that "[t]he Defendants have committed an unfair method of competition or an unfair or deceptive act or practice in the business of insurance by misrepresenting an insurance policy by: a. Making untrue statements of material fact; Failing to state a material fact necessary to make other statements made not misleading, considering the circumstances under which the statements were made; c. Making a statement in a manner that would mislead a reasonable prudent person to a false conclusion of a material fact; and d. Failing to disclose a matter required by law to be disclosed." (FAC ¶¶ 76-77).

"To state a claim under Chapter 541 of the Texas Insurance Code the plaintiff must show that (1) it is a 'person' as defined by Section 541.002(2) of the Texas Insurance Code; (2) defendant is a 'person' as defined by Section 541.002(2) of the Texas Insurance Code; (3) the defendant engaged in an act or practice that violated (a) Chapter 541, subchapter B, of the Texas Insurance Code, (b) Section 17.46 of the Texas Business and Commerce Code and the plaintiff relied on the act or practice to its detriment, or (c) a tie-in provision of the Texas Insurance Code; and (4) the defendant's act or practice was a producing cause of its actual damages." *Chinese Civic Ctr. v. Catlin Specialty Ins.*, No. H-10-4098, 2011 WL 1806599, at *5 n. 3 (S.D. Tex. May 11, 2011).[6]

---

[6] Tex. Ins. Code Ann. § 541.051(1) provides that "[i]t is an unfair method of competition or an unfair or deceptive act or practice in the business of insurance to: (1) make, issue, or circulate or cause to be made, issued, or circulated an estimate, illustration, circular, or statement misrepresenting with respect to a policy issued or to be issued: (A) the terms of the policy; (B) the benefits or advantages promised by the policy; or (C) the dividends or share of surplus to be received on the policy[.]" Tex. Ins. Code Ann. § 541.051(1).  Tex.

Claims alleging violations of Chapter 541 of the Texas Insurance Code (similar to Texas DTPA claims) are subject to the heightened pleading requirements of Fed. R. Civ. P. 9(b). *See Berry v. Indianapolis Life Ins. Co.*, 608 F.Supp.2d 785, 800 (N.D. Tex. 2009); *SHS Inv. v. Nationwide Mut. Ins. Co.,* 798 F.Supp.2d 811, 815 (S.D. Tex. 2011) ("Claims alleging violations of the Texas Insurance Code and the Deceptive Trade Practices Act ... are subject to the requirements of Rule 9(b).").

As alleged, Plaintiffs' Texas Insurance Code claim amounts to no more than a boilerplate recitation of a claim under Chapter 541 of the Texas Insurance Code, which is insufficient to state a plausible claim for relief as a matter of law. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("the pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation" and [a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). Moreover, the vague, conclusory assertions alleged in support of Plaintiffs' claim (predicated on alleged deceptive acts and misrepresentations) fall far short of satisfying Fed. R. Civ. P. 9(b).

---

Ins. Code Ann. § 541.061 provides that "[i]t is an unfair method of competition or an unfair or deceptive act or practice in the business of insurance to misrepresent an insurance policy by: (1) making an untrue statement of material fact; (2) failing to state a material fact necessary to make other statements made not misleading, considering the circumstances under which the statements were made; (3) making a statement in a manner that would mislead a reasonably prudent person to a false conclusion of a material fact; (4) making a material misstatement of law; or (5) failing to disclose a matter required by law to be disclosed, including failing to make a disclosure in accordance with another provision of this code." Tex. Ins. Code Ann. § 541.061.

20

Additionally, the arguments raised above with respect to the Texas DTPA claim apply equally to the Plaintiffs' Texas Insurance Code claim and compel the conclusion that dismissal is appropriate. Plaintiffs claim that "the Defendants" violated Chapter 541 of the Texas Insurance Code by misrepresenting the SFIP, the terms of the SFIP, and the benefits or advantages promised by the SFIP. *See* FAC ¶¶ 75-77. However, under federal law, at all pertinent times Plaintiffs were charged with knowledge of the terms and conditions of the SFIP, which is published in its entirety in the Code of Federal Regulations.[7] *See Grigsby v. Fid. Nat. Prop. & Cas. Ins. Co.*, No. 2:10-CV-361-DF-CE, 2011 WL 4591930, at *3 (E.D. Tex. Aug. 31, 2011), *report and recommendation adopted,* No. 2:10-CV-361-DF-CE, 2011 WL 4591925 (E.D. Tex. Sept. 30, 2011) ("Because the SFIP is a federal regulation, Plaintiffs are charged with knowing the provisions of the SFIP ... Furthermore, participating in a federal insurance program comes with a duty to become familiar with the rules of the program from which the person seeks to benefit." (citations omitted)). Not only were the Plaintiffs charged with knowledge of the SFIP, but under federal law they were charged with the task of ascertaining whether the property they were purchasing was in a "preferred" or "non-preferred" flood zone, and they were charged with the duty to ascertain (and knowledge of) the proper flood zone classification. As noted by the District Court in *Spong, supra*:

> As a practical matter, the "constructive" knowledge attributed by law to the Spongs defines the position they were in at all times relevant to their causes of action. *Despite what anyone else may have said or done, when the*

---

[7] "An SFIP is not only an insurance policy, it is also a federal regulation." *Copeland v. Texas Farmers Ins. Co.*, No. CV G-12-141, 2016 WL 6833939, at *1 (S.D. Tex. May 18, 2016) (citing 44 C.F.R. Pt. 61, App. A(1)).

> *Spongs negotiated the purchase of the property and applied for flood insurance with Fidelity they "knew" that property located within the CBRS was uninsurable and any SFIP issued for such property would be void*. As the Fifth Circuit pointed out, with the attribution of that knowledge "(i)t was incumbent upon the Spongs to determine whether their property was eligible for a SFIP," but they "did not do so even though they were in possession" of information that the property may, in fact, be located in the CBRS. Consequently, any claim involving any alleged misrepresentations by Fidelity and detrimental reliance by the Spongs fails as a matter of law.
>
> While all of the Spongs' claims are premised upon their allegations that they were misinformed or deceived during the procurement of their SFIP, those claims that require proof of actual misrepresentation include negligent misrepresentation, violations of the Texas Insurance Code, violations of the Texas Deceptive Trade Practices Act, fraud, fraud by non-disclosure, fraudulent inducement, promissory estoppel and equitable estoppel. Those claims must be dismissed.

*Spong v. Fid. Nat'l Prop. & Cas. Ins. Co.*, No. CV G-10-228, 2016 WL 1718840, at *1 (S.D. Tex. Apr. 28, 2016) (emphasis added), *aff'd*, 2017 WL 2870989 (5th Cir. July 5, 2017).  As in *Spong*, the Plaintiffs in this case cannot claim ignorance of applicable NFIP statutes and regulations, including the SFIP, and cannot claim ignorance of publicly available information (including information contained in FEMA's Flood Insurance Manual and Flood Map Service Center) relating to the property's SFIP eligibility, zoning and rating, as an excuse for allegedly relying on the SFIP premium quote by SMI Agency or any other representations that may have made during the application process.  And as noted above, the SFIP obligated the Plaintiffs (not Wright National) to obtain and furnish accurate information and statements about the property to be used to determine the eligibility of the risk, the kind of policy to be issued, and the correct premium payment. For all of these reasons, dismissal of the Texas DTPA claim is appropriate.

**3.** **The First Amended Complaint Fails To State A Claim Against Wright National For Negligent Misrepresentation.**

The First Amended Complaint also purports to allege a claim against Wright National for negligent misrepresentation. Plaintiffs allege that "Defendants supplied false information in the course of their business, profession or employment, or in the course of a transaction in which Defendants have a pecuniary interest"; that "[s]uch information was supplied by Defendants for the guidance of Plaintiffs in the transactions described hereinabove"; that "Defendants failed to exercise reasonable care or competence in obtaining or communicating such information"; and that "Plaintiffs suffered pecuniary loss in the terms of additional premiums, past and future and face loss from have a less complete form of flood insurance" and "[s]uch damages are proximately caused by Plaintiffs' justifiable reliance on such information." (FAC ¶¶ 80-83).

"Under Texas law, a claimant alleging negligent misrepresentation must show the following: (1) the representation is made by a defendant in the course of his business, or in a transaction in which the defendant has a pecuniary interest; (2) the defendant supplies 'false information' for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers a pecuniary loss by justifiably relying on the representation." *Spring St. Apts Waco, LLC v. Philadelphia Indem. Ins. Co.*, No. W-16-CA-00315-JCM, 2017 WL 1289036, at *11 (W.D. Tex. Apr. 6, 2017) (citations omitted).

Fed. R. Civ. 9(b) requires a plaintiff to plead a claim for negligent misrepresentation with particularity. Bald assertions, conclusory allegations and

23

formulaic recitations of the claim (such as those contained in the First Amended Complaint) are insufficient to satisfy the plausibility standard under *Iqbal* and *Twombly*, let alone the more stringent pleading requirements of Rule 9(b).  *See Nelson v. Ocwen Loan Servicing, LLC*, No. CV H-16-778, 2016 WL 7324284, at *7 (S.D. Tex. Nov. 7, 2016), *report and recommendation adopted*, No. CV H-16-778, 2016 WL 7242735 (S.D. Tex. Dec. 15, 2016).

The arguments made above with respect to Plaintiffs' Texas DTPA and Texas Insurance Code claims apply squarely to the negligent misrepresentation claim, which fails to plausibly allege that the Peltiers suffered any pecuniary loss as a result of their justifiable reliance on any misrepresentation by Wright National.  *See Spong*, 787 F.3d at 312; *Lobeck*, 2017 WL 923387, at *1 (insured under SFIPs could not have reasonably relied on alleged misrepresentations by WYO Program Carriers that her property was insurable).  Additionally, Plaintiffs' negligent misrepresentation claim falls far short of satisfying Rule 9(b)'s heightened pleading requirements, and plainly fails to allege with specificity and particularity the time, place, and contents of any false representation by Wright National; the identity of the person making the misrepresentation and what he obtained thereby; or the "who, what, when, where, and how" of any false information or misrepresentations attributable to Wright National.  Similar to the Texas DTPA and Texas Insurance Code claims, the negligent misrepresentation claim should be dismissed for failure to state a plausible claim against Wright pursuant to Fed. R. Civ. P. 12(b)(6), and for failure to satisfy the heightened pleading requirements of Fed. R. Civ. P. 9(b).

## VI.    CONCLUSION AND PRAYER FOR RELIEF

WHEREFORE, Defendant Wright National Flood Insurance Company prays that this Honorable Court grant Wright National's Motion to Dismiss pursuant to Fed. R. Civ. P. 9(b) and 12(b)(6), and dismiss the First Amended Complaint with prejudice.

Dated:  August 21, 2017                  Respectfully submitted,

**BAKER & HOSTETLER, LLP**

By:    /s/  *Bradley K. Jones*
       Bradley K. Jones
       State Bar No. 24060041
       Federal ID No. 931122
       811 Main Street, Suite 1100
       Houston, Texas 77002
       Telephone:    (713) 751-1600
       Facsimile:     (713) 751-1717
       E-mail:  bkjones@bakerlaw.com

AND

**FREEBORN & PETERS LLP**
Theodore I. Brenner (VSB # 17815)
Alexander S. de Witt (VSB # 42708)
Joel W. Morgan (VSB # 65761)
411 East Franklin Street, Suite 200
Richmond, VA 23219
Telephone:    (804) 644-1300
Facsimile:     (804) 644-1354
E-mail: tbrenner@freeborn.com
E-mail: adewitt@freeborn.com
E-mail: jwmorgan@freeborn.com

## CERTIFICATE OF SERVICE

I hereby certify that on August 21, 2017, a true copy of the foregoing has been served upon all parties or their attorneys contemporaneously with the filing of this pleading using this Court's CM/ECF system.

/s/ *Bradley K. Jones*
Bradley K. Jones

25